IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOSH WHITAKER, MONIQUE JANNETTE, AND LESLIE GREER, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:03-CV-0411-P |
| WEST VILLAGE LIMITED PARTNERSHIP *et al.,* | § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Now before the Court is Plaintiffs' Motion to Substitute CWS Entities. After careful consideration of the relevant briefing and the applicable law, the Court hereby GRANTS Plaintiffs' Motion to Substitute CWS Entities and hereby joins CWS as a defendant to this lawsuit. The Court further finds that CWS is bound to the same terms and obligations of the Consent Decree as West Village.

## BACKGROUND

Plaintiffs instituted this lawsuit against Defendants West Village Limited Partnership and PPC/IMA Intown Village Limited Partnership ("West Village") in February 2003. The case was litigated throughout 2003 and 2004. In June 2004, West Village divided its retail/residential property into two units, one including all the retail development and the other including all the residential development ("the Apartments"). West Village sold the Apartments to CWS Apartment

1

Homes, LLC on June 3, 2004.[1]  Neither West Village nor CWS informed Plaintiffs or the Court of the sale of the Apartments.

In September 2004 - after the sale of the Apartments - West Village entered into a Remediation Consent Decree ("Consent Decree") with Plaintiffs.  The Consent Decree required the remediation of all units in the Apartments to new construction FHA standards.  The Court conditionally approved the Consent Decree in October 2004 and entered a final order in August 2005.

In late-October 2005, after discovering that some of the Apartments' units were being re-leased without remediation in violation of the Consent Decree, Plaintiffs filed a motion to compel compliance.  In November 2005, West Village filed their response brief in which West Village explained for the first time that it had sold the entire residential complex to a third party.  In February 2006, the Court granted Plaintiffs' motion to compel compliance and held that remediation of all units must occur "either at the request of a current tenant within sixty days of the tenant's request or at the end of the tenancy, before any unit may be released or sold."  (Court Order, Feb. 6, 2006.)

On May 22, 2006, West Village instructed the Registered Accessability Specialist appointed by the Court to oversee the remediation that she need not inspect the 'Loft units' because they were being sold, not leased, by CWS.  On June 8, Plaintiffs filed a motion for sanctions based on Defendants' repeated failure to remediate the Apartments, in violation of court order.

---

[1] The contract for sale of the property was executed between West Village and CWS Apartment Homes, LLC.  However, the entities responsible for the briefing in this case are C.W.S. Village Residential, L.P. and C.W.S. Urban Lofts, L.P.  The Court will assume that C.W.S. Village Residential, L.P. and C.W.S. Urban Lofts, L.P. are the appropriate and necessary entities for purposes of this lawsuit.  All three entities will be referred to collectively herein as "CWS."

On June 9, 2006, Plaintiffs filed a lawsuit in this district against CWS, the current owners of the Apartments, to compel remediation. That case was transferred to this Court. In that case, Civil Action No. 3:06-CV-1018-P, CWS takes the position that it was not bound by the Consent Decree because it was entered into by the West Village owners after the sale of the Apartments to CWS. CWS maintains that West Village had no right to control or bind CWS with respect to the Apartments after the sale had taken place.

On August 23, 2006, the Court issued an order instructing CWS and Plaintiffs to brief the issue of whether CWS is bound as a successor in interest by the Consent Decree entered in this case even though it was not a signatory to said decree. It is this issue that is before the Court.

## DISCUSSION

CWS argues it is not bound to the Consent Decree as a successor in interest to West Village because CWS did not know about, never consented to, and was not represented in the negotiations leading up to the entry of the Consent Decree. CWS argues that the Consent Decree is not binding on it because it was not in privity with West Village - the party to the Consent Decree. CWS maintains it was not in privity because it was not given a full and fair opportunity to litigate the claims; it was not a party to the litigation, it did not have actual knowledge of the state of the litigation, and it did not have the same interest as West Village in the resolution of the litigation.

Plaintiffs contend that CWS should be substituted as a party to the Consent Decree pursuant to Rule 25(c) of the Federal Rules of Civil Procedure and have filed a motion requesting same. Rule 25(c) provides that when there is a transfer of interest, an action may be continued by or against the original party unless the Court substitutes or joins the new owner into the case.

Rule 25 is a procedural mechanism for joining a successor in interest if it is determined that

3

the cause of action survives the transfer of interest. *See In re Covington Grain Co.,* 638 F.2d 1357, 1361 (5th Cir. 1981); *Ransom v. Brennan,* 437 F.2d 513, 520 (5th Cir. 1971); Chas. A. Wright & Arthur Miller, Federal Practice & Procedure § 1952 (2d ed. 1986). Thus, first the Court must determine whether CWS is bound by the terms of the Consent Decree despite not being a signatory thereto.

Generally, a party cannot be bound by a consent decree to which it was not a party. *See United States v. Int'l Bhd. of Elec. Workers, Local No. 130,* 72 F.R.D. 507, 510 (D.C. La. 1976). However, a consent decree may be binding on a nonsignatory where the signatory had apparent authority to bind the nonsignatory. *See Fleming v. Cooper*, 284 S.W.2d 857, 860 (Ark. 1956); Chas. A. Wright & Arthur Miller, Federal Practice & Procedure § 4453 (2d ed. 1986). For instance, a signatory may have apparent authority to bind a non-signatory to a judgment if the nonsignatory acquiesced to the litigation. *See id.* In this case, CWS purchased property that it knew was the subject of ongoing litigation. It learned of the litigation during pre-sale negotiations, yet made no attempt to determine the nature or scope of the dispute. CWS purchased the Apartments while the litigation was pending. After purchasing the Apartments, CWS learned that the case was scheduled for mediation, but made no attempt to attend or participate in the mediation. Following the mediation date, CWS made no contact with West Village, the Court, or Plaintiffs to inquire about the status of the case. (CWS Br. at 2-4.) The Court concludes from CWS's course of conduct that CWS acquiesced to this lawsuit and that West Village was vested with the apparent authority to act on CWS's behalf.

Likewise, when a nonparty is advised of litigation involving its interests and takes no action to inform the plaintiff of its interests, it may be bound by a judgment under the theory of equitable

4

estoppel by conduct. *See Howe Coal Co. v. Prairie Coal Co.,* 362 F. Supp. 1117, 1124-25 (D. Ark. 1973); Wright & Miller, *supra* § 4453. While CWS was not obligated to intervene in this lawsuit, it did have a responsibility to inform the Court and/or Plaintiffs that it had purchased the property, to keep itself apprised of the litigation, and to inform the Court and/or Plaintiffs of its intent not to honor the terms of the Consent Decree prior to its entry. CWS was informed of the lawsuit and took no action to inform Plaintiffs or protect its interests. The Court concludes that CWS is estopped from refusing to honor the Consent Decree and is bound to its terms.

CWS may also be bound to the consent decree if it was in privity with West Village. *See United States v. Int'l Bhd. of Elec. Workers, Local No. 130,* 72 F.R.D. 507, 510 (D.C. La. 1976). A person may be bound by a judgment of another even though the party is not one of the parties to the lawsuit if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative. *See Fuji Photo Film Co., Inc. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 598 (5th Cir. 1985); *Aerojet Gen. Corp. v. Askew*, 511 F.2d 710, 719 (5th Cir. 1975).

This Court's review of the record discloses ample evidence that CWS's relationship with West Village and this litigation was in fact sufficiently close to establish privity. CWS admits it knew of this lawsuit before June 2004, when it purchased the Apartments. (Br. at 2.) CWS knew the case was important enough to insist on an indemnification provision and a contractual provision requiring West Village to keep it apprised of developments in the case. (Br. at 3.) West Village notified CWS that it was heading to mediation in August 2004 - *after* the sale of the Apartments to CWS. Despite the fact that the lawsuit concerned CWS's property, CWS did not attend or participate in the mediation and did not follow up with West Village concerning the outcome of the mediation, apparently expecting West Village to protect CWS's interests at the mediation and to

5

mediate on CWS's behalf. West Village notified CWS that if mediation was unsuccessful, trial would begin in September 2004. CWS did not attend or participate in the trial and did not follow up with West Village concerning the outcome of the trial, again indicating that it expected West Village to protect its interests and act on its behalf. West Village signed a consent decree in September 2004 and the Court approved it in August 2005. At no time did CWS seek any information from West Village about this litigation. It did not learn of the Consent Decree until November 21, 2005. CWS's lack of interest in following this case and its lack of participation at every stage of the litigation strongly suggests that CWS intended West Village to act as its virtual representative for purposes of this litigation.[2] Furthermore, the fact that CWS did not notify the Court or Plaintiffs of its purchase and ownership of the Apartments when it knew about this litigation suggests that they intended West Village to protect its interests and act as its representative. Further, had CWS or West Village informed Plaintiffs of the change of ownership of the Apartments, there is no doubt that Plaintiffs would have added CWS as a defendant to this lawsuit. Apparently, both West Village and CWS felt that disclosure was unnecessary because both believed that West Village was protecting and representing both entities' interests. CWS's decisions to handle this litigation in this manner operates in favor of finding privity.

Further, despite CWS's arguments to the contrary, West Village and CWS had nearly identical interests at the time of the litigation. West Village, as the original owner, and CWS, as the purchaser and now-present owner, were and are each responsible for ensuring ADA compliance of

---

[2] The fact that the contract prohibited West Village from offering remediation to settle the case without CWS's consent does not establish that CWS did not consider West Village its virtual representative. To the contrary: this fact, combined with the other evidence, indicates that CWS turned the case over to West Village with some conditions that West Village may have breached. CWS argues that West Village obligated CWS beyond that which would have been required by the law. If that is the case, CWS's recourse is directly against West Village, not to disclaim responsibility in litigation it chose to ignore.

6

the property.³ This factor further weighs in favor of the finding that West Village and CWS were in privity with one another at the time the Consent Decree was executed.

Therefore, for the reasons stated herein, and pursuant to Federal Rule 25(c), the Court hereby GRANTS Plaintiffs' Motion to Substitute CWS Entities and hereby joins CWS as a defendant to this lawsuit. The Court further finds that CWS is bound to the same terms and obligations of the Consent Decree as West Village.

It is so ORDERED, this 12th day of December 2006.

_____
JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE

---

³ That West Village may have committed CWS to perform remediation work in excess of CWS's actual legal obligations is irrelevant to this analysis on this particular case.