IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOSH WHITAKER, MONIQUE JANNETTE and LESLIE GREER, Plaintiffs, | § | CIVIL ACTION NO. |
| v. | § | 3:03-CV-0411-P |
| WEST VILLAGE LIMITED PARTNERSHIP and PPC/IMA INTOWN VILLAGE LIMITED PARTNERSHIP, ET AL., Defendants/Cross-Claimants/Third-Party Plaintiffs. | § | **CLASS ACTION** |

---

| | | |
|---|---|---|
| PATRICIA SAPP, Plaintiff, | § | CIVIL ACTION NO. |
| v. | § | 3:06-CV-1018-P |
| CWS APARTMENT HOMES, L.L.C., ET AL., Defendants. | § | |

## MOTION TO ADOPT WEST VILLAGE'S PROPOSAL FOR REMEDIATION AND BRIEF IN SUPPORT THEREOF

Pursuant to this Court's Order of April 12, 2010 directing the parties to file a brief setting forth discussions of the two (2) remaining issues for resolution no later than April 30, 2010, West Village offers the following:

### Introduction

1. The parties' Consent Decree requires an analysis of apartment

accessibility and remediation where called for. This dispute arises regarding the remediation plan to be adopted by the Court. Two issues exist:

**Statement of Issues and Facts**

2. Regarding the inclusion of resident-owned lofts located within the West Village complex, West Village does not take a position as to whether these lofts are covered by the Consent Decree; rather, it leaves that dispute to be addressed by plaintiffs and defendant CWS. Should the Court include lofts for remediation purposes, West Village stands ready to perform remediation obligations under the Consent Decree for those units.

3. The other issue remaining for the Court's resolution concerns the methodology to be adopted by the Court for specific kitchen modifications involving either: (a) the pathway clearance between opposing kitchen counters; or (b) the creation of a 48" parallel approach to kitchen stove cook tops. The parties have agreed on all other phases of remediation.

4. West Village has physically examined the apartments within the West Village complex which present possible kitchen pathway clearance or parallel approach issues and has determined that twenty-one (21) apartment units require some adjustment to achieve minimum pathway clearance between opposing kitchen counters, and twenty-seven (27) units require some adjustment to establish a 48" parallel approach to stove cook tops (see Affidavit of Robert Bagwell attached hereto as Exhibit "A").

5. The Fair Housing Act Accessibility Guidelines (FHAAG, Section 7.1 of Chapter 7) and the Fair Housing Act Design Manual (FHADM) set forth a 40" pathway clearance between opposing kitchen counters and a 48" parallel approach to stove cook tops. Based upon the measurements conducted by West Village of these apartments, forty-six (46) of these forty-eight (48) apartment units could achieve compliance by the methodology suggested below by West Village. There are two (2) units in the West Village complex which will require the movement of an entire kitchen counter system to obtain the requisite 40" clearance set forth above.

6. West Village understands from discussions with the Court's Registered Accessibility Specialist (RAS) Gaila Barnett and counsel for the plaintiff class that both will accept a 1" deviation from the 40" standard set forth in the above FHA documents. This would mean that a minimum of 39" would be required for the pathway clearance between opposing counters and opposite cabinet faces or appliances. Construction standards would allow a deviation of up to 1" from this in the ordinary course of constructing new apartments.

7. With this clearance issue in mind, West Village proposes to replace refrigerator appliances in forty-six (46) of the forty-eight (48) units in need of specific kitchen modifications at once or ***in the alternative***, upon *actual Tenant request* as evidenced by a ***Check Box*** option in the apartment lease. The RAS has also recommended that CWS could retain use of the existing refrigerators until such time as

when a Tenant or prospective Tenant requests greater kitchen pathway clearance by adding a ***Check Box*** option to its lease, at which time West Village has agreed to replace the protruding refrigerator with a modern compliant refrigerator at its expense (information on refrigerator manufacturer attached).

8. By replacing existing protruding refrigerators with appliances not as deep, the 39" or more pathway clearance is achieved, and the 48" parallel approach to stove cook tops is also achieved. West Village proposes this as its corrective or remediation measure for these forty-six (46) apartment kitchens.

9. CWS has rejected this remediation approach as being too burdensome, and rather has insisted that West Village physically move the kitchen counter islands in all forty-eight (48) units, requiring a deconstruction and reconstruction of the kitchen islands in these units. CWS has adamantly declined to agree to replacement of refrigerators as a remediation methodology or to allow prospective Tenant requesting increased kitchen pathway clearance or 48" parallel approach via the ***Check Box*** option, even though the proposed refrigerators appear to be in better scale in the kitchens (see photos attached).

10. The cost of replacing refrigerators is approximately One Thousand Dollars ($1,000.00) per unit; the cost of moving kitchen counter islands or relocating the refrigerator to the pantry area, and constructing a new pantry at the existing refrigerator location is approximately Seven Thousand Dollars ($7,000.00) per unit.

11. While either method (exchange of appliances or moving kitchen islands and relocating refrigerators and building new pantries) provides the minimum clearance for FHAAG/FHADM kitchens, the refrigerator approach will cost approximately Forty-Six Thousand Dollars ($46,000.00), while relocating kitchen counter islands, moving refrigerator locations and building new pantries will cost approximately Two Hundred Seventy Six Thousand Dollars ($276,000.00). This additional Two Hundred Thirty Thousand Dollar ($230,000.00) cost is the additional "price tag for the CWS position.

12. Because of West Village's agreement to indemnify CWS as part of the terms of sale of the West Village apartments to CWS, West Village must pay the costs of whichever remediation this Court orders.

13. In the Consent Decree approved by this Court, there is a provision for considering ". . . unreasonable difficulty or expense . . ." in achieving remediation. In paragraph 3 of the Consent Decree, "Modification" this language allows the Court to consider this cost and difficulty issue when the parties cannot agree upon the proper approach. West Village requests that the Court do so under the terms of paragraph 3.0 of the Consent Decree.

**Argument**

14. The parties' rights and duties are set forth in the Consent Decree. The Consent Decree terms embrace the Fair Housing Act, 42 U.S.C. §3601 *et. seq.*, its regulations (24 CFR 100.1, *et seq.*) and accessibility guidelines (the "FHAAG"). It is

obvious that more than one method exists to provide requisite and required clearance for the kitchens at issue. As stated above, there are forty-six (46) apartments which may be resolved by West Village's approach; only two (2) would require physical movement of the kitchen counter islands. West Village is prepared to move these two islands.

15. One methodology is simple and cost-efficient - that of West Village. The other approach is considerably more involved, more time consuming and costs four-times as much – the proposal of CWS. Both methodologies indeed provide compliant kitchens in the apartments at issue. However, as contemplated by the Consent Decree's paragraph 3, one method - that urged by CWS - is unreasonable in expense and difficulty.

16. West Village's proposal to exchange refrigerators is both simple and cost-effective. If CWS prefers, West Village can provide the "less deep" refrigerators upon request of a tenant by use of a "***Check Box***" option in the apartment lease. West Village can also perform their proposed remediation at one time by replacing all refrigerator units in the forty-six (46) apartments described above. Each apartment would be furnished a refrigerator unit with less depth and thereby achieve a 39" or greater clearance for an accessible path of travel in the kitchen. West Village's proposal would cause no construction down-time nor loss of rent to CWS, but this loss would be occasioned by the deconstruction and reconstruction of kitchen counter islands proposed by CWS.

17. CWS, in its proposal, would endure the loss of an apartment for the time required to move a kitchen counter island forty-six (46) times, not to mention the issue of putting up with construction trash and waste and possible inconvenience to other tenants. No better compliance concerning Consent Decree terms would be gained by the CWS deconstruction/reconstruction proposal. The singular difference is that CWS' insistence on kitchen counter island relocation would be that West Village would incur almost six (6) times as much expense, while achieving the same compliance as under its appliance exchange proposal.

18. The Consent Decree in paragraphs 2.1, 2.2 and 2.10 gives the Court guidance regarding accessible kitchens. The Consent Decree embraces the FHAAG in particular. These guidelines (Requirement No. 7) stipulate that there should be a 40" clearance between kitchen counter cabinet faces on the one side and appliance or cabinet-faces on the other. It requires a 48" parallel approach to cook tops. See attached 24 CFR 100.205, FHAAG No. 7 and the diagram from the FHA Design Manual (FHADM) attached hereto as Exhibit "B". The plaintiffs, the Court's RAS and West Village believe that 39" clearance is sufficient for this purpose.

19. Nothing in the statute, Code of Federal Regulations, FHAAG or the FHA Design Manual provide a preference for one method of remediation of kitchen accessibility over another. By analogy, the regulations interpreting the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.* make clear that removal of barriers for the

disabled should be accomplished without much difficulty or expense. See 29 CFR §36.304. The Consent Decree allows the Court to control unreasonable expense and difficulty in the remediation process in Consent Decree paragraph 3. The proposal for kitchen remediation by West Village is by far the only reasonable method of achieving accessible and compliant kitchens.

**Conclusion**

19. West Village urges the Court to adopt its proposal for remediation of the forty-six (46) apartment units in dispute as the simplest, most cost-efficient method of providing accessibility consistent with the Consent Decree and the parties' duties and obligations thereunder.

Respectfully submitted,

/s/Edward B. Cloutman, III

Edward B. Cloutman, III
(Bar No. 044 110 00)
Law Offices of
Edward B. Cloutman, III
3301 Elm Street
Dallas, Texas 75226-2562
(214) 939-9222
(214) 939-9229 (Telecopier)

COUNSEL FOR DEFENDANTS/CROSS-PLAINTIFFS WEST VILLAGE LIMITED PARTNERSHIP & PPC/IMA INTOWN VILLAGE LIMITED PARTNERSHIP

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument has been served upon the below-listed counsel of record, by placing same in the United States Mail, postage prepaid, on this the 30th day of April, 2010:

Mr. Kenneth D. Carden
Ms. Lydia K. Springer
The Carden Law Office
1409 South Lamar, Suite 601
Dallas, Texas 75220

Mr. Palmer D. Bailey
Law Office of Palmer D. Bailey
16633 Dallas Parkway, Suite 600
Addison, Texas 75001

Mr. Richard M. Hunt
Munsch, Hardt, Kopf & Harr, P.C.
3800 Lincoln Plaza
500 N. Akard Street
Dallas, Texas 75201

/s/ Edward B. Cloutman, III
Edward B. Cloutman, III

 

**Existing Refrigerator**

**Proposed 24" Summit Refrigerator**

## Information about the manufacturer of Summit Refrigerators.

## About Us

For forty years, SUMMIT Appliance has built its name on quality, innovation, and reliability. We're just getting started.



## Company History

Felix Storch, Inc. was founded in 1969 and has been a leading supplier of compact, specialty, commercial, and medical refrigerators and freezers ever since. In our first year, we trademarked the SUMMIT® brand name to guarantee quality at the highest level. We began our distribution in Long Island City, New York, before moving to the Bronx in 1983, where our headquarters are now located at 770 Garrison Avenue. Due to continued growth, we recently acquired a state-of-the-art warehouse facility in Edison, New Jersey, bringing our total property for product development, manufacturing, and warehousing to over 200,000 square feet. Our products now include a wide range of major appliances sold both nationally and internationally. We proudly deliver to the Northeastern United States using our own SUMMIT trucks. Despite our expansion, we remain a private, family-owned business with no outside investors.

## Something For Everyone

Today, we carry over 600 models of specialty refrigerators and freezers, including the largest range of fully automatic defrost compacts available on the market. Additionally, our product line consists of ranges, microwave ovens, cooktops, combination kitchens, washers and dryers, beer dispensers, wine cellars, and more. With our expanding line of built-in and freestanding units, SUMMIT serves a variety of household, commercial, and scientific markets. Specialized compact products for offices, schools, and food service establishments, refrigerators and freezers for medical and laboratory storage, minibars for hotels, and the industry's largest selection of weather-proof outdoor refrigerators are just a few of the items you can find in our always expanding catalogue.

## What Makes Us Different

From innovative design to superior construction, SUMMIT products embody quality from the inside out. Our models can be modified to meet specific customer needs, whether that means adding brass finishes to a beer dispenser for a dramatic look or installing digital controls on laboratory coolers for user flexibility. We offer a full range in style and size that includes our unique thin-line models, designed to fit in those commonly found but hard-to-fill narrow spaces. We have one of the industry's largest collection of ADA compliant appliances and proudly manufacture a dozen models of ENERGY STAR listed products.

## Inspiration At Home

SUMMIT takes pride in its homegrown workforce and strives to keep much of its production in-house and in the USA. In 2007, SUMMIT matched a $248,000 grant from the NYC Department of Small Business with $300,000 of its own investment to provide specialized training to its employees. Seventy-five members of the SUMMIT team completed a year-long course in subjects such as quality control, customer service, packaging, lean

manufacturing, assembly, safety and warehousing. In light of its success for both SUMMIT and New York, the program was renewed for 2009, with an expanded curriculum that adds instruction in ESL and mathematics.

The combination of our NYC roots and national customer base has enabled us to take a unique look at the appliance challenges presented by the smaller kitchen. As a result, we have developed the industry's largest selection of products that address this need.

Read about the success of our training program in The New York Times

### Innovation At Every Step

Nothing goes into a SUMMIT box before we've thought outside it. Take, for example, our most recently trademarked products that bring beer storage to new levels--literally. Our COLD CAVERN™ beer froster chills beer just above the freezing point while our new PUB CELLAR™ keeps ales at a warmer temperature for connoisseurs with more European tastes. Wine enthusiasts can enjoy our latest stainless steel wine cellar that simultaneously chills bottles of white while preserving red with a thoughtful dual thermostat. We continue to advance refrigeration with expanded use of auto-defrost technology and size innovation.

Read about the new direction of refrigeration in The New York Times

### The Future Is Now

Our product development is continuously evolving to serve the community with care. Many of our newest pieces offer environmentally friendly solutions without sacrificing performance, such as our exclusive line of built-in induction cooktops that require half the time and energy used by gas and electric ranges. We now provide the option of adding energy saving self-closing doors to our compacts. In 2010, our line will expand to include even more ENERGY STAR compact units. Since many of our appliances are used for medical and scientific purposes, we pay special attention to answering laboratory needs with our most reliable technology and design. For example, our new MED series of vaccine refrigerators and freezers are specially designed to protect cooler contents by stabilizing interior temperature with more precision than previously available units. While we continue to take pride in our proven models, we will never stop creating innovative upgrades and improvements that benefit our consumers in the best possible way.

We serve our markets through a variety of distributors and wholesalers, a large network of dealers, and some catalog and online retailers. If you need additional information about our products, we encourage you to explore our product catalogue. Contact our sales department at 1-800-932-4267 or email us at info@summitappliance.com